STATE OF NEBRASKA, APPELLEE, V. MAURICE SCOTT, APPELLANT.

324 N.W.2d 670

Filed October 1, 1982. No. 81-814.

Dennis R. Keefe, Lancaster County Public Defender, and James L. Foster, for appellant.

Paul L. Douglas, Attorney General, and Bernard L. Packett, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

McCOWN, J.

The defendant was found guilty of first degree murder by a jury and sentenced to life imprisonment by the District Court. This appeal followed.

The defendant and victim had lived together with their three small children for some time in an apartment complex in Lincoln, Nebraska. On the evening of April 22, 1980, the victim and a female friend of hers left the children at the apartment of a neighbor, intending to be gone for a short time. When they returned to the apartment of the defendant and the victim at approximately 10:30 p.m., they were met at the door by the defendant. He expressed anger at the victim for leaving the children and slapped her. The friend interceded and persuaded the defendant to accompany her in her automobile. They drove around for approximately 25 minutes while she attempted to calm the defendant down before returning to the apartment. At approximately 11 p.m. the defendant was returned to his apartment.

At approximately 3 a.m. on the morning of April 23 the defendant awoke a next door neighbor by pounding on her door, and asked her to call an ambulance. The neighbor did so and then followed the defendant to his apartment, where she observed that the apartment was in disarray. There was some broken furniture and blood on the floor. The victim was lying on a bed. Emergency and police personnel arrived soon afterward and determined that the victim was dead. An autopsy performed later established that the victim had suffered multiple bruises, abrasions, and lacerations, and the lacerations were largely confined to the scalp. Death was attributed to loss of blood and shock resulting from the injuries, particularly those to the head. The de-

fendant at the time appeared frenzied and frantic, and said: "I can't believe it. I murdered my woman." He also said: "Man, I must have flipped out," and "I just went crazy. I didn't mean to do it." The defendant was arrested, charged with first degree murder, and pleaded not guilty. Following trial a jury found him guilty of first degree murder, and a three-judge panel sentenced him to life imprisonment.

On this appeal the defendant first contends that it was error for the trial court to allow the prospective jurors to be questioned as to their scruples regarding the death penalty. The defendant argues that because the jury has nothing to do with setting the punishment for the defendant, such questioning would lead to a conviction-prone jury favoring the prosecution and thus deny the defendant a fair trial and an impartial jury.

In this case, before voir dire, the defense moved that the State be barred from making any inquiries of the jury about their feelings, scruples, or opposition to the death penalty. The motion was denied. During voir dire the court asked all prospective jurors and alternate jurors generally if there was anyone opposed to capital punishment. Those jurors who indicated that they were opposed were then questioned individually by the court. The court asked the individual jurors if they could listen to the evidence and the law and make a determination of guilt or innocence based solely on the evidence and law without considering the fact that capital punishment might be imposed. Only one prospective juror was removed for cause over defendant's objection, and that juror stated that her opposition to the death penalty was so strong that she could not take the oath to decide the case fairly.

The states are prohibited from imposing the death penalty pursuant to the verdict of a jury from which those with conscientious scruples against capital

punishment or who oppose capital punishment were excluded. *Witherspoon v. Illinois,* 391 U.S. 510, 88 S. Ct. 1770, 20 L. Ed. 2d 776 (1968).

In the present case no death penalty is involved, and jurors who opposed capital punishment or had conscientious scruples against it were not automatically excluded for cause. The one juror removed for cause over defendant's objection in the present case stated that her convictions as to the death penalty would prevent her from fairly deciding the guilt or innocence of the defendant based on the facts and the law. Our cases establish that removal for cause in such circumstances is mandatory. See, *State v. Anderson and Hochstein,* 207 Neb. 51, 296 N.W.2d 440 (1980), *cert. denied* 450 U.S. 1025, 101 S. Ct. 1731, 68 L. Ed. 2d 219 (1981); *State v. Kirby,* 185 Neb. 240, 175 N.W.2d 87 (1970). Under the circumstances in the instant case neither the questioning of the jurors as to their convictions regarding capital punishment nor the removal of jurors for cause was in error. See *State v. Rowe,* 210 Neb. 419, 315 N.W.2d 250 (1982).

The defendant also contends that he was denied a fair trial because the trial court refused to instruct the jury as to the defense of insanity or diminished mental capacity. The defendant pleaded not guilty, but no pleading ever asserted the defense of insanity. The psychiatrist appointed by the trial court to examine the defendant testified outside the presence of the jury that he observed the defendant and administered a mental status examination, from which he concluded that at the time of the murder the defendant knew what he was doing and the nature and quality of his acts and could distinguish between right and wrong. The defendant did not present any witnesses or evidence in defense of the charge against him and there was no direct evidence of insanity presented at the trial. The defendant now argues that the evidence of the State alone was

sufficient to support his request for instructions on insanity and diminished mental capacity. We disagree.

The established rule in Nebraska is that a court should instruct the jury upon any valid defense which the evidence supports. The court is not required to give instructions upon a defense where there is no evidence to prove the facts claimed. *State v. Prim,* 201 Neb. 279, 267 N.W.2d 193 (1978); *State v. Stewart,* 197 Neb. 497, 250 N.W.2d 849 (1977). The trial court in the present case carefully reviewed all the evidence touching on the defendant's mental state at the time of the murder and properly concluded that there was no evidence to warrant an instruction on insanity. The record supports that determination.

The judgment of the trial court was correct and is affirmed.

AFFIRMED.

CLINTON, J., participating on briefs.